```
                    UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,
                          WESTERN DIVISION
```

R.E. COLEMAN AND ELOISE COLEMAN                              PLAINTIFFS


VS.                                CIVIL ACTION NO. 5:08cv260-DCB-JMR


ACCEPTANCE INDEMNITY INSURANCE
COMPANY AND JOHN DOES 1-5                                    DEFENDANTS


## OPINION AND ORDER

This matter comes before the Court on the defendant's Motion for Summary Judgment and Declaratory Judgment **(docket entry no. 27)** pursuant to Federal Rules of Civil Procedure 56 and 57. Having carefully considered the Motion, memoranda in support and opposition thereof, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

### I. BACKGROUND AND PROCEDURAL HISTORY

The plaintiffs in this case are R.E. Coleman and Eloise Coleman (the "Colemans"). The defendant is Acceptance Indemnity Insurance Company ("Acceptance"). This litigation arises out of the defendant's refusal to defend or indemnify the plaintiffs in a state court action filed against them for claims arising out of the shooting death of Alicia Turner.

On January 23, 2005, Alicia Turner was a patron at the Chocolate City Lounge in Yazoo City, Mississippi. (Def.'s Mot.

Summ. J. Ex. 4 at ¶ 4.) While Turner was present at the Chocolate City Lounge, a fight began between some of the patrons of the lounge. Turner, although she was uninvolved in the altercation, was shot and sustained fatal injuries. (Def.'s Mot. Summ. J. Ex. 4 at ¶ 4.) At the time of the shooting, R.E. and Eloise Coleman, through their business, Triple C Leasing ("Triple C"), owned the property on which the Chocolate City Lounge was located. (Def.'s Mot. Summ. J. Ex. 4 at ¶ 5.) The Colemans were subsequently sued in the Circuit Court of Yazoo County, Mississippi on January 15, 2008, for claims arising out of the shooting incident. (Def.'s Mot. Summ. J. Ex. 5.)

On the date of the shooting, a policy of commercial general liability insurance issued to Triple C by Acceptance was in effect. (Def.'s Mot. Summ. J. Ex. 2.) Seeking a defense and, if necessary, indemnification in the state court suit in accordance with this policy, the Colemans presented their claim to Acceptance on April 29, 2008. (Def.'s Mot. Summ. J. Ex. 6.) Acceptance reviewed the claim, including the underlying complaint and the policy, and issued a denial letter to the plaintiffs on May 8, 2008. (Def.'s Mot. Summ. J. Ex. 7.) The denial was based upon the following exclusion in the policy:

ASSAULT AND BATTERY EXCLUSION

> It is agreed that this policy does not cover any claims arising out of Assault and Battery or out of any act or

> omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of you, your employees or volunteers, patrons or any other persons. Claims, accusations or charges of negligent hiring, placement, training or supervision arising from any of the foregoing are not covered. Furthermore, we shall have no obligation to defend you, or any other insured, for any such loss, claim or suit.

(Def.'s Mot. Summ. J. Ex. 2 at 21.)

On August 5, 2008, following the denial of the plaintiffs' claims for defense and indemnity, R.E. and Eloise Coleman filed this lawsuit against Acceptance in the Circuit Court of Yazoo County, Mississippi. (Def.'s Mot. Summ. J. Ex. 4.) The Complaint seeks damages against the defendant for breach of contract and bad faith denial of the plaintiffs' insurance claim. (Def.'s Mot. Summ. J. Ex. 4.) On August 5, 2008, Acceptance removed the action to this Court.

Acceptance filed its motion for summary judgment on March 3, 2009. The Colemans filed their response in opposition to the motion on April 16, 2009. A rebuttal was filed by Acceptance on April 27, 2009. The motion for summary judgment now is before the Court.

## II. ANALYSIS

*A. Summary Judgment Standard*

Summary judgment is apposite "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[1] The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion

---

[1] "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate Partnership v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted).

for summary judgment." Anderson, 477 U.S. at 252. The nonmovant must instead come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is properly rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

*B. Duty to Defend*

The law governing the interpretation of insurance contracts is well settled in Mississippi. Under the "allegations of the complaint" rule (sometimes referred to as the eight-corners test) which Mississippi has adopted, the Court looks to the allegations in the underlying state court complaint to determine whether Acceptance owes the plaintiffs a duty to defend. American States Ins. Co. v. Natchez Steam Laundry, 131 F.3d 551, 553 (5th Cir. 1998)(citing State Farm Mut. Auto. Ins. Co. v. Taylor, 233 So. 2d 805, 808 (Miss. 1970)). When comparing the complaint with the policy terms, the Court looks not to the particular legal theories set forth in the underlying complaint, but to the allegedly tortious conduct underlying the suit. See Equal Employment Opportunity Comm'n v. Southern Publ'g Co., 894 F.2d 785, 790-91 (5th Cir. 1990) ("Under Mississippi's 'allegations of the complaint' rule if the factual allegations of the complaint

5

bring the action within coverage of the policy, the insurer has a duty to defend."); see also State Farm Mut. Auto. Ins. Co. v. Taylor, 233 So. 2d 805, 808 (Miss. 1970) (stating that although an insurer normally bases its duty to defend on the facts alleged in the petition, it may also have a duty to defend if it knows of other facts that warrant coverage). So long as some allegation within the underlying complaint potentially triggers coverage under the insurance policy, the insurer has a duty to defend and, if necessary, indemnify the plaintiffs. Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395 (5th Cir. 2008). Conversely, where the reviewing court determines that no possibility exists that any of the allegations in the underlying complaint could fall within the coverage of the policy, then the insurer has no duty to defend. Baker Donelson Bearman & Caldwell, P.C. v. Muirhead, 920 So. 2d 440, 451 (Miss. 2006).

Acceptance, bearing the burden of demonstrating the applicability of a policy exclusion, asserts that coverage is excluded by the "Assault and Battery Exclusion" contained in the policy. In response, the Colemans argue that the "Assault and Battery Exclusion" does not relieve Acceptance of its duty to defend because the underlying complaint alleges negligence, not assault and battery, on the part of the Colemans. Specifically, the Colemans argue:

6

> When looking at the face of the complaint, other than wrongful death liability, the gravamen of the claims waged against the defendants in the underlying suit are premised entirely on negligence. The Plaintiffs in the underlying suit do not claim that an assault and battery or any other intentional misconduct caused the damages claimed therein; they do not contend to know the identity of any specific person or group of people who intended any harm to anyone, let alone Alicia Turner; they do not contend that Turner was involved in any fight that took place prior to the incident; they do not contend that Turner was in fear of bodily injury or harm from the firearm; they do not contend in the complaint or otherwise to even know from where the "errant" bullet ultimately striking Turner came; and they do not contend that what occurred was anything more than simple negligence.

(Pls.' Br. Summ. J. ¶ 21.)

Restated, the underlying complaint does not specifically assert that the fatal injuries that befell Alicia Turner were the result of an assault and battery. Rather, the state court plaintiffs aver that Alicia Turner was shot trying to escape gunfire that resulted from an altercation in which she was not involved. The state court complaint further alleges that as a direct and proximate result of the negligence of the defendants (plaintiffs in this action), Alicia Turner suffered injuries and died. According to the complaint in the underlying action, the Colemans' negligence included: failure to provide a reasonably safe environment for its patrons, failure to provide reasonable security, failure to warn of the danger of crimes on the premises, failure to hire adequate security personnel, failure to

7

adequately respond to the assault while it was occurring on their premises, and failure to secure police intervention. In other words, according to the state court plaintiffs, the Colemans failed to take various steps that may have prevented the shooting which caused the fatal injuries to Alicia Turner. The Court must determine whether these allegations fall within the language of the exclusion.

The Court begins by determining whether the exclusion is ambiguous and in need of interpretation. Under Mississippi law, "interpretation of an insurance contract presents a question of law." Old Line Life Ins. Co. v. Brooks, No. 3:05cv722, 2007 WL 892448 (S.D. Miss. Mar. 21, 2007) (citing Lewis v. Allstate Ins. Co., 730 So.2d 65, 68 (Miss. 1998)). The goal in performing this interpretation is "to ascertain the intent of the parties and [the court] should take into account the subject matter of the contract, the circumstances under which it was made and the purpose sought to be achieved by the parties." Premier Entertainment Biloxi, LLC v. James River Ins. Co., No. 1:06cv12, 2007 WL 2908791 (S.D. Miss. October 03, 2007). [I]f the "language in an insurance contract is clear and unambiguous, . . . the court should construe it as written." Jackson v. Daley, 739 So. 2d 1031, 1041 (Miss. 1999)(citing Lowery v. Guaranty Bank & Trust Co., 592 So. 2d 79, 82 (Miss. 1991)). Where the policy's

language is ambiguous, however, the reviewing court must construe the ambiguous language against the insurer, as the drafter of the policy, and in favor of the insured. J & W Foods Corp. v. State Farm Mutual Auto Ins. Co., 723 So. 2d 550, 552 (Miss. 1998).

A term within an insurance policy is ambiguous if it can be interpreted to have two or more reasonable meanings. Id. Under Mississippi law, a court "must give the policy language its plain and ordinary meaning, see Blackledge v. Omega Ins. Co., 740 So.2d 295, 298 (Miss. 1999) ("terms used in an insurance policy should be understood in their plain, ordinary, and popular sense rather than in a philosophical or scientific sense"), and resolve any ambiguities or equivocal expressions in favor of the insured, see Centennial Ins. Co. v. Ryder Truck Rental, Inc., 149 F.3d 378, 382-83 (5th Cir. 1998), but not create ambiguities where none exist." American Guarantee and Liability Ins. Co. v. 1906 Co., 273 F.3d 605, 611 (5th Cir. 2001). Where a policy term "is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and will be enforced as written." H.E. Butt Grocery Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 150 F.3d 526, 529 (5th Cir. 1998).

Additional considerations are implicated when the Court is confronted with exclusions and limitations to coverage. The Mississippi Supreme Court has pronounced that, while clear and

unambiguous policy language will be enforced according to its terms, "recovery cannot be limited by an insurer for benefits for which a premium is paid by an insured, notwithstanding clear and unambiguous language of attempted limitation by the insurer." Gov't Employees Ins. Co. v. Brown, 446 So. 2d 1002, 1006 (Miss. 1984). Clauses in a policy seeking to limit coverage "must be written in clear and unmistakable language" and are strictly construed. Miss. Farm Bureau Mut. Ins. Co. v. Jones, 754 So. 2d 1203, 1204(¶ 8) (Miss. 2000). But, when stated without uncertainty or ambiguity, exclusionary language is binding upon the insured. Lewis v. Allstate Ins. Co., 730 So. 2d 65, 70 (¶ 25) (Miss. 1998).

Examining the significant portions of the "Assault and Battery Exclusion," the Court first concludes that the terms "assault" and "battery" as used in the policy are unambiguous. "The intentional tort of assault is committed 'where a person (1) acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and (2) the other is thereby put in such imminent apprehension.'" Jordan v. Wilson, 5 So. 3d 442, 448 (Miss. Ct. App. 2008) (quoting Morgan v. Greenwaldt, 786 So. 2d 1037, 1043 (Miss. 2001)). A "battery" goes beyond "assault", and in addition to the requirement the element of intent there is

also the requirement that a harmful contact actually occur. Croft v. Grand Casino Tunica, Inc., 910 So.2d 66, 76 (Miss. Ct. App. 2005). The Court thus finds the terms "assault" and "battery" to be unambiguous as they can be given clear legal meanings.

The Court likewise concludes that the phrase "arising out of" is unambiguous. The Fifth Circuit has held that the words "arising out of," when used within an insurance policy, are "broad, general, and comprehensive terms effecting broad coverage." Red Ball Motor Freight, Inc. v. Employers Mut. Liab. Ins. Co., 189 F.2d 374, 378 (5th Cir. 1951). The words are "understood to mean originating from, having its origin in, growing out of or flowing from." American States Ins. Co. v. Bailey, 133 F.3d 363, 370 (5th Cir. 1998). A claim need only bear an incidental relationship to the described conduct for the exclusion to apply. Scottsdale Ins. Co. v. Texas Sec. Concepts and Investigation, 173 F.3d 941 (5th Cir. 1999)(citing American States Ins. Co. v. Bailey, 133 F.3d 363, 370 (5th Cir. 1998)). The Court thus finds the phrase "arising out of" to be unambiguous. Accordingly, this Court is satisfied that the assault and battery exclusion provision is unambiguous.

It is clear that the underlying complaint's allegations of negligent conduct, asserting that the Colemans failed to use

11

precautionary measures to prevent the shooting, fit squarely within that portion of the "assault and battery exclusion" which excludes coverage not only for any claim "arising out of assault and battery" but for any claim arising "out of any act or omission in connection with the prevention or suppression of [an assault and battery]." (Def.'s Mot Summ. J. Ex. 2 at 21.)

In Cincinnati Ins. Co. v. Markel American Ins. Co., No. 3:07cv168, 2008 WL 2415248 (S.D. Miss. June 11, 2008), District Court Judge Barbour relied in part on Stiglich v. Tracks, 721 F. Supp. 1386 (D.D.C. 1989). This Court likewise is persuaded by the Stiglich decision. The Stiglich court analyzed the phrase "out of any act or omission in connection with the prevention or suppression of such acts" in the context of an assault and battery exclusion. The relevant facts in Stiglich are as follow:

> The plaintiff sued the defendant dance club alleging that the latter was negligent in failing to hire sufficient security personnel to prevent or stop an assault against the plaintiff by an unidentified patron of the club. The defendant then filed a third party complaint seeking to compel its insurer to defend and indemnify the plaintiff's claims. The insurer argued that coverage for plaintiff's claims was excluded under the terms of the assault and/or battery exclusion.

Id. at 1387.

The assault and battery exclusion in Stiglich is essentially the same as the exclusion in this case. In finding the insurer had no duty to defend and/or indemnify as a result of the assault

12

and battery exclusion, the Stiglich court reasoned:

> [The insured] contends that the plaintiff's claim is not excluded by the Assault and Battery Exclusion because the claim is in essence one of negligence arising out of its failure to provide adequate supervision and security in the club and not the assault which resulted from its alleged negligence. However, the terms of the policy clearly provide that the policy does not apply "to bodily injury or property damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts." [The insured's] alleged failure to hire sufficient security is precisely an "act or omission" which could have prevented or suppressed the assault in this case.

Id. at 1388

In the case sub judice, it appears that the plaintiffs in the underlying action contend that their injuries arose out of an assault and battery which, in turn, arose out of the Colemans' negligence. (Def.'s Mot. Summ. J. Ex. 5 at ¶ 21.) Although the underlying complaint alleges negligence, the action would not have been brought but for the altercation that occured in the club the night Alicia Turner was shot. Accordingly, the Court finds that the alleged acts of negligence are "acts or omissions" which could have prevented the altercation at the Chocolate City Lounge and in turn prevented the shooting and subsequent death of Alicia Turner. Thus, the injured parties' claims against the Colemans are unambiguously excluded from coverage under the assault and battery exclusion contained in the insurance policy.

13

*C. Duty to Indemnify*

Having decided that Acceptance owes the plaintiffs no duty to defend, the Court turns next to whether Acceptance has a duty to indemnify the plaintiffs should they be found liable in the state court action. The duty to indemnify is not as broad as the duty to defend. Cullop v. Sphere Drake Ins. Co._, 129 F. Supp. 2d 981, 982 (S.D. Miss. 2001) (quoting Merchants Co. v. Am. Motorists Ins. Co._, 794 F. Supp. 611, 616 (S.D. Miss. 1992)). Whereas the duty to defend turns on the factual allegations in a complaint, the duty to indemnify turns "upon the actual facts that underlie the cause of action and result in liability." Essex Ins. Co. v. Greenville Convalescent Home Inc., 236 Fed. Appx. 49, 52 (5th Cir. 2007). Importantly, "if there is no duty to defend, there can be no duty to indemnify." Evanston Ins. Co. v. Neshoba County Fair Ass'n, Inc., 442 F.Supp.2d 344, 346 n.1 (S.D. Miss. 2006).

This Court already has concluded that, as a result of the "Assault and Battery Exclusion", the insurance policy does not place Acceptance under a duty to defend the plaintiffs in the underlying suit. Therefore, Acceptance is also under no duty to indemnify the Colemans should they be found liable in the state court action.

14

### D. Bad Faith Claims

Finally, the Court considers the plaintiffs' bad faith claim. Under Mississippi law, success on the issue of coverage is a predicate to any claim for bad faith. Knight v. U.S. Fid. & Guar. Ins. Co., 65 F.3d 34, 37 (5th Cir. 1995); Stubbs v. Mississippi Farm Bureau Cas. Ins. Co., 825 So. 2d 8, 13 (Miss. 2002). The Court has determined that Acceptance is under no duty to defend or indemnify the plaintiffs against the underlying suit. As such, the plaintiffs' claims for bad faith also fail.

## IV. CONCLUSION AND ORDER

Based upon the foregoing analysis and authorities,

IT IS HEREBY ORDERED that defendant's Motion for Summary Judgment and Declaratory Judgment **(docket entry no. 27)** is GRANTED.

A separate final judgment in compliance with Rule 58 of the Federal Rules of Civil Procedure shall be entered, dismissing this action with prejudice.

SO ORDERED, this the 26th day of June 2009.

                                          s/ David Bramlette
                                 UNITED STATES DISTRICT JUDGE